UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEXIS KEYZIA PRATT,

                          Plaintiff,                Case # 18-CV-6017-FPG

v.                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

## INTRODUCTION

Plaintiff Alexis Keyzia Pratt brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, the Commissioner's motion is DENIED, Pratt's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

Pratt was born in August 1995. Tr. 303. As a child, Pratt was found disabled and received SSI benefits. Tr. 18. Under 20 C.F.R. § 416.987, however, the agency reassesses a child's eligibility for SSI benefits once the child turns eighteen. Pratt claimed that she remained disabled due to conversion disorder,[1] depression, sleeping disorder, and mood disorder. Tr. 92.

---

[1] Conversion disorder "involves symptoms or deficits affecting voluntary motor or sensory function that suggest a neurologic or other general medical condition. Yet, following a thorough evaluation, which includes a detailed neurologic examination and appropriate laboratory and radiographic diagnostic tests, no neurologic explanation exists for the symptoms." Scott A. Marshall, M.D., *Conversion Disorders*,

Pratt proceeded *pro se* during the administrative process. On June 3, 2016, Pratt and her mother, Melissa Pearce, appeared at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 69. On October 7, 2016, a second hearing was held, at which Pratt, her mother, and a vocational expert ("VE") testified. Tr. 39. On March 27, 2017, the ALJ issued a decision finding that Pratt was not disabled. Tr. 18-26. On November 8, 2017, the Appeals Council denied Pratt's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

---

MEDSCAPE (Nov. 9, 2015), https://emedicine.medscape.com/article/287464-overview (last visited May 21, 2019).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Pratt's claim for benefits under the process described above. At step one, the ALJ found that Pratt had not engaged in any substantial gainful activity. Tr. 25. At step two, the ALJ found that Pratt has three severe impairments: history of seizures, anxiety, and depression. Tr. 20. At step three, the ALJ found that her impairments did not meet or medically equal any Listings impairment. Tr. 20-22.

Next, the ALJ determined that Pratt retains the RFC to perform "a full range of work at all exertional levels." Tr. 22. The ALJ also found that Pratt can only occasionally interact with other people and must avoid exposure to hazards such as unprotected heights and moving machinery. Tr. 22.

At step four, the ALJ found that Pratt has no past relevant work. Tr. 25. At step five, the ALJ relied on the VE's testimony and found that Pratt can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 25-26. Specifically, the VE testified that Pratt can work as a hand packager, laundry laborer, and housekeeping cleaner. Tr. 26. Accordingly, the ALJ concluded that Pratt is not disabled. Tr. 26.

## II.   Analysis

Pratt argues that the ALJ's decision was erroneous on several grounds.  The Court need only discuss one issue, however, because it is dispositive: whether the ALJ erred by failing to obtain medical opinions from Pratt's treating physicians.  *See* ECF No. 10-1 at 29-30.

For years, Pratt has suffered from a condition where she periodically faints or has seizure-like symptoms. Tr. 20, 22-23.  Pratt claims this condition has significantly curtailed her ability to partake in daily activities: she does not drive, her attendance in high school was sometimes sporadic, she is unable to maintain employment, and her mother assists her with many tasks including cooking, cleaning, shopping, etc.  Tr. 52-53, 487, 489.  Pratt alleges that the seizures can occur up to five times per week.  Tr. 487.

In summer 2013, David Wang, M.D., treated Pratt for her condition.  Tr. 312, 319.  After testing, Dr. Wang concluded that Pratt's seizures are psychogenic nonepileptic attacks.[2]  Tr. 319.  He "strongly urged" Pratt to continue therapy and seek a psychiatry consultation.  *Id.*  In April 2014, Mongkae Siripornsawan, M.D., diagnosed Pratt with persistent depressive disorder and a history of conversion disorder.  Tr. 525.  Dr. Siripornsawan prescribed Prozac to Pratt to "address her depressive and anxious symptoms."  *Id.*  It appears that Pratt's seizures correlate with her stress, depression, and anxiety.  Tr. 523-25.

The consultative examiners came to different conclusions regarding the limitations posed by Pratt's condition.  Yu-Ying Lin, Ph. D., a psychiatric examiner, diagnosed Pratt with depressive disorder, anxiety disorder, posttraumatic stress disorder, and "rule out" mood and conversion disorders.  Tr. 363.  The only marked limitation that Dr. Lin identified was Pratt's ability to

---

[2] "Psychogenic nonepileptic seizures (PNES) . . . are paroxysmal episodes that resemble and are often misdiagnosed as epileptic seizures; however, PNES are psychological (i.e., emotional, stress-related) in origin."  Selim R. Benbadis, M.D., *Psychogenic Nonepileptic Seizures*, MEDSCAPE (July 26, 2018), https://emedicine.medscape.com/article/1184694-overview (last visited May 21, 2019).

appropriately deal with stress. Tr. 362. Dr. Lin also opined that Pratt needs assistance to manage funds and had a "guarded to fair" prognosis. Tr. 363.

Adam Brownfield, Ph. D., also conducted a psychiatric examination. He diagnosed Pratt with posttraumatic stress disorder, major depressive disorder, conversion disorder "by history," and frequent seizures. Tr. 490. Although Dr. Brownfield indicated that Pratt's limitations were largely mild to moderate, he found, like Dr. Lin, that Pratt was markedly limited in appropriately dealing with stress. *Id.* But Dr. Brownfield also found that Pratt's prognosis was good. Tr. 490.

Marisela Gomez, M.D., an internal medicine examiner, concluded that Pratt has anxiety, seizure, conversion, bipolar, depression, and posttraumatic stress disorders. Tr. 368. Nevertheless, Dr. Gomez opined that Pratt's prognosis was good and that she should only avoid "driving or operating machinery, heights, or uneven surfaces because of [her] seizure disorder." *Id.*

Seema Khaneja, M.D., a neurologic examiner, diagnosed Pratt with syncopal episodes and depression with anxiety. Tr. 456. She noted conversion disorder as one diagnosis but placed a question mark next to it, suggesting that she was not certain regarding that condition. *Id.* Regardless, Dr. Khaneja opined that Pratt's prognosis was good and that she had no limitations. *Id.*

As discussed above, the ALJ found that Pratt had severe impairments of anxiety, depression, and "history of seizures." Tr. 20. In the ALJ's view, these impairments translated into minor functional limitations: Pratt could only occasionally interact with other people and must avoid exposure to hazards such as unprotected heights and moving machinery. Tr. 22. He discounted Pratt's allegations of significant limitations largely based on her conservative, routine, and inconsistent treatment, as well as her capacity to "complete a range of daily activities." Tr. 25. The ALJ found that Pratt's seizures did not occur as frequently as she claimed in light of the

"very minimal treatment" she received, the "inconclusive" diagnosis relating to the seizures, and the absence of "objective evidence supporting her claims of frequent seizures." Tr. 22.

Importantly, it does not appear from the record that the ALJ ever attempted to solicit a medical opinion from one of Pratt's treating sources. The Court concludes that, by failing to do so, the ALJ erred.

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The treating physician rule "necessarily dovetails with" the question of whether there was sufficient evidence in the record for the ALJ to assess the claimant's RFC. *See Swanson v. Colvin*, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013). Indeed, "the opinion of a treating physician is an especially important part of the record to be developed by the ALJ." *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *8 (W.D.N.Y. July 2, 2012).

To that end, the ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This duty is heightened where, as here, the claimant is proceeding *pro se* and has alleged disability due to mental illness. *See Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009);

*McKinley v. Comm'r, Social Sec. Admin.*, No. 17-CV-6439, 2018 WL 4328840, at *8 (S.D.N.Y. Sept. 11, 2018). Among other things, the ALJ must "make every reasonable effort" to help the claimant get medical evidence from her medical sources. 20 C.F.R. § 416.912(b)(1). Consistent with this responsibility, courts have held that "ALJs have an affirmative duty to request medical source statements from a [claimant's] treating sources in order to develop the record." *Johnson v. Berryhill*, No. 16-CV-1003, 2018 WL 3768310, at *4 (W.D.N.Y. Aug. 9, 2018); *McKinley*, 2018 WL 4328840, at *8 (collecting cases). However, an ALJ's failure to solicit such medical opinions does not compel remand if "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Social Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order).

Here, the ALJ's failure to obtain a treating source opinion left an obvious gap in the record. Pratt has a complex mental health history, with interconnected problems of depression, anxiety, and past traumatic incidents. Not only have Pratt's mental conditions allegedly impaired her ability to engage in daily activities, but they appear to be a causal factor in her psychogenic nonepileptic attacks. However, a consequence of Pratt's inconsistent treatment is that there is not an abundance of objective medical evidence on which to rely to determine the severity of, and limitations posed by, Pratt's conditions. Moreover, the opinions of the consultative examiners, while consistent in many respects, diverge significantly on the issue of whether Pratt can appropriately handle stress. That issue, in turn, bears on whether Pratt's seizure condition will frequently interfere with her ability to work.

Thus, this is the sort of case in which a treating physician's opinion is valuable, if not necessary. Courts have noted that a treating physician's opinion is critical when mental impairments are at issue, because "a mental health patient may have good days and bad days; she

may respond to different stressors that are not always active." *Martinez v. Comm'r of Social Sec.*, No. 16-CV-2298, 2017 WL 9802837, at *14 (S.D.N.Y. Sept. 19, 2017) (internal quotation marks omitted); *see also Rizzo v. Berryhill*, No. 16 Civ. 4898, 2017 WL 3578701, at *16 (S.D.N.Y. Aug. 17, 2017) (noting the "difficulty in determining whether [individuals with mental illness] will be able to adapt to the demands or 'stress' of the workplace"). Moreover, those suffering from mental illness may structure their lives in a way to minimize stress and "reduce [their] symptoms." *Craig v. Comm'r of Social Sec.*, 218 F. Supp. 3d 249, 268 (S.D.N.Y. 2016) (quotation omitted). "[T]he longitudinal relationship between a mental health patient and her treating physician [therefore] provides the physician with a rich and nuanced understanding of the patient's health." *Martinez*, 2017 WL 9802837, at *14. An opinion derived from a "one-off" consultative examination, or the ALJ's own interpretation of the claimant's treatment notes, is not generally an adequate substitute for a treating physician's informed opinion. *See id.*; *Hooper v. Colvin*, 199 F. Supp. 3d 796, 816 (S.D.N.Y. 2016).

Without the insight of a treating source, the ALJ was put in the position of conducting his own lay evaluation of Pratt's treatment history. In finding that Pratt's mental health conditions did not pose significant functional limitations, the ALJ noted that her care was "conservative and routine," that her seizure diagnosis was "inconclusive," and that she received inconsistent treatment for her seizures, depression, and anxiety. Tr. 22-25. The ALJ then used that assessment of the evidence to weigh the consultative opinions and reject the marked stress limitations identified by two examiners. Tr. 24. But given the intricacy of Pratt's mental health conditions, the Court is not convinced that the ALJ could appropriately judge whether, from a medical point of view, Pratt's treatment was "conservative" and "inconsistent," and her seizure diagnosis "inconclusive." For example, the "inconsistency" of treatment must be evaluated based on the

mental health condition at issue and the claimant's particular circumstances, and so cannot be readily evaluated by a layperson with no medical knowledge. *See Martinez*, 2017 WL 9802837, at *14. If the symptoms of Pratt's depression and anxiety are periodic but flare up with certain types of stressors—a question that a treating physician would be well-suited to answer—then Pratt may be unable to work notwithstanding her "inconsistent" treatment over the years. In short, the ALJ's own interpretation of Pratt's treatment history "does not supersede the need for a medical source to weigh in on [Pratt's] functional limitations." *Hooper*, 199 F. Supp. 3d at 816.

Accordingly, it was incumbent upon the ALJ to solicit opinions from Pratt's treating sources, who were best positioned to illuminate the general nature of Pratt's mental health conditions and the specific issues and limitations she faced. Remand is required.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 22, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court